SKOWHEGAN BANK *versus* WILLIAM G. CUTLER.

R. S. of 1841, c. 76, § 12, provide that whenever the capital stock of any corporation is divided into shares, and certificates thereof issued, such shares may be transferred by indorsement and delivery of the certificate thereof; but such transfer shall not be valid, except between the parties thereto, until the same shall have been so entered in the books of the corporation, as to show the *names of the parties,* the *number* and *designation* of the shares, and the *date* of the *transfer.*

Whether or not a particular book is the stock ledger of a bank and kept for that purpose, is a question of fact, which may be proved by the testimony of the cashier.

Such book need not bear the attestation of any officer of the bank.

A share in the capital stock of a corporation is merely some aliquot part, and not any particular part. Any "designation," except by stating the owner or owners, would be impossible, even if the shares were consecutively numbered.

When the stock ledger of a bank shows the name of the proprietor, the date of the transfer, the number of shares transferred, the name of the transferer, and the value of the shares, it is a sufficient "entry in the books of the bank," within the latter clause of R. S. of 1841, c. 76, § 12.

Where the proprietor of a certificate of five shares of capital stock indorsed upon it the transfer of the "within *share,*" — using the singular number instead of the plural, — to the defendant, and, upon the certificate of one share, the transfer of the "within *shares,*" — using the plural number instead of the singular; and the defendant thereafterwards surrendered the certificates and took one for six shares, which he transferred by indorsement and delivery to another without controversy, and no question has been raised between the parties; — *Held,* that in an action by a creditor of the original proprietor of said shares, against said defendant, for aiding said proprietor in a fraudulent transfer and concealment of his property in said shares, he will not be permitted to deny his own title.

A new trial will not be granted because of the admission of irrelevant testimony, if the facts thereby proved were such as could not have injured either party by misleading the jury.

The acts of a debtor in securing the transfer of the funds in a bank to himself, and from himself to the defendant, together with his written declarations accompanying such acts, are admissible on the question of the fraudulent intent of such *debtor,* in an action on the case, by a creditor against the defendant for aiding such debtor in the fraudulent transfer and concealment of his property.

In an action by a creditor against the defendant for aiding a debtor in the fraudulent transfer and concealment of his property, the jury are not authorized to give the plaintiff interest from the date of the writ.

ON EXCEPTIONS AND MOTION.

CASE.

This action was founded on R. S., c. 113, § 47, for aiding a debtor in the fraudulent transfer of his property, to secure it from creditors.

It was proved that Lysander Cutler, father of the defendant, on Sept. 29, 1856, procured two notes to be discounted by the plaintiffs, one for $2000, and the other for $3000, signed by Farrar & Cutler, Lysander Cutler being one of the members of the firm of Farrar & Cutler, payable to the order of Samuel Farrar, the other member of said firm, and indorsed by him and also by Lysander Cutler.

The plaintiffs obtained judgment on said notes, in Somerset county, Sept. term, 1861, against Farrar & Cutler, no part of which has been satisfied.

The plaintiffs introduced two certificates of bank shares in the People's Bank, Waterville, viz. : —

"No. 46 to 50, inclusive.                    " 5 Shares.

"People's Bank, Waterville, Maine. — Be it known, that Lysander Cutler is the proprietor of *five* shares in the capital stock of the People's Bank," &c. * * * * * *

" [L. S.]   Dated at Waterville this 8th day of Oct., 1855."
                              (Signed by the President.)
(Countersigned by the Cashier.)

On the back of this certificate was the following indorsement : — " I, L. Cutler, for a valuable consideration, hereby transfer the within *share* to Wm. G. Cutler. — Witness my hand, this 1st day of Dec., 1856.'

"Attest, S. Percival."          (Signed.)          " L. Cutler."
" No. 629.                                        " 1 Share.

"People's Bank, Waterville, Me. — Be it known, that Lysander Cutler is the proprietor of one share in the capital stock of the People's Bank,' &c. * * * * *

" [L. S.]   Dated at Waterville, this 1st day of Oct. 1856."
Signed and countersigned like the other.        *

This certificate was indorsed as follows : — " I, L. Cutler, for a valuable consideration, hereby transfer the within *shares*

to Wm. G. Cutler. — Witness my hand, this 1st day of Dec., 1856." (Signed.) " L. Cutler."
" Attest, S. Percival."

The plaintiffs also introduced, against the defendant's objection, a book, purporting to be a ledger, exhibiting the debt and credit with the stockholders of the bank. The book bore no attestation by any officer of the bank, as being a book of record of the bank. The only evidence which this book contained, relating to the aforesaid bank stock, or its transfer, was as follows : —

| " Dr. | Lysander Cutler, Dexter. | | Cr. |
|---|---|---|---|
| 1856, | | 1855, | |
| Dec. 1. | To transfer 6 shares to Wm. G. Cutler, $600 | Aug. 9. By paid for stock in part, | $250 |
| | | Oct. 5. By paid for balance, | 250 |
| | | By paid for new stock, | 100 |
| | | | $600 |

| " Dr. | William G. Cutler. | | Cr. |
|---|---|---|---|
| 1857, | | 1856, | |
| Aug. 3. | To transfer 2 shares to C. P. Mason, $200 | Dec. 1. By transfer 6 shares from Lysander | |
| Aug. 3. | To transfer 2 shares to S. Percival, 200 | Cutler, | $600 |
| Sept. 19. | To transfer 2 shares to Nathan Wyman, 200 | | |
| | $600" | | |

*Sumner Percival*, called by the plaintiffs, testified that the book produced was the stock ledger of the People's Bank ; that he made the said transfer, on Dec. 1, 1856, and also made said entries at the times of their dates, at which time he was cashier of the bank ; and that he issued a certificate to the defendant at the same time and delivered it to Lysander Cutler.

He also testified, that the certificates in the case were surrendered to him on Dec. 1, and that said Wm. G. Cutler

surrendered the certificate of the six shares when he transferred said shares as appears on the stock ledger.

*Abner Coburn*, called by the plaintiffs, testified that he was president of plaintiffs' bank, on Sept. 29, 1856, and for a long time before had been, and that he still is president.

He further testified, subject to the defendant's objection, that Lysander Cutler, on Sept. 29, when he obtained the money from the plaintiffs' bank, on the two notes discounted, made certain statements to him relative to his business, viz. : that he was doing well in all of his manufacturing ; that he made a profit on everything he made ; that there was no comparison between his mode of doing business and Mr. L.'s ; that L. did not know what his goods cost ; and that he had a very profitable navy contract. The defendant was not present when the said statements were made.

He further testified, that on Dec. 7, 1856, there were $172 in the plaintiffs' bank to the credit of Farrar & Cutler ; that Farrar & Cutler also had two accounts in their favor, one, against A. & P. Coburn, for $218,61, and the other against Sweetser & Sanborn, for $367,08 ; and that on that day he received a letter,—which the defendant admitted was lost,—from Lysander Cutler. The defendant objected to the witness' stating the contents of said letter. The presiding Judge admitted the testimony as to its contents, which, (adopting the language of the report,) "tended to show that L. Cutler, in that letter, made false pretences in order to get said money ($172) from the bank, and to get A. & P. Coburn to give their notes for said two accounts."

He further testified that he did give the notes as requested, and sent the money ($172) and notes by the messenger who brought the letter, to said Cutler ; that, at the maturity of said notes, he found them in the People's Bank, Waterville, indorsed as follows :—"Pay Wm. G. Cutler.—Farrar & Cutler ;" that there was no indorsement on them by the defendant ; that he paid the notes and destroyed them ; and that they were the only notes given by A. & P. Coburn to said Farrar & Cutler.

It was admitted that the stock of the People's Bank was divided into shares, and certificates thereof issued, and that the bank was a regular banking corporation at the time of all of the aforesaid transactions.

The defendant requested the Court to give the following instructions to the jury, viz. : —

1st. That the indorsement on the certificate D was not sufficient in law to assign and transfer said shares to defendant; certificate D of the five shares having the word " share," in the indorsement, in the singular.

2d. That the indorsement on the certificate E., of one share, was not sufficient in law to assign and transfer that share to defendant; certificate E having the word " shares" in the plural.

3d. That if the jury, in examining the indorsements on the two certificates, were satisfied that the assignment and transfer on certificate E, (of the one share,) was put there by mistake, instead of being put on the other certificate, then the indorsement was not sufficient in law to assign and transfer that share, No. 629, to defendant.

4th. That, in order to prove a transfer of said shares to defendant, it was incumbent on plaintiff to show that certificates of said shares were issued to defendant. The Court instructed the jury that this was immaterial.

5th. That the evidence of the book, the stock ledger, did not show such a transfer to defendant as the law requires, to enable them to maintain this action.

6th. That the record in said ledger ought to be attested by the cashier or by some officer of the bank.

7th. That the number and designation of the shares transferred should appear on the book.

8th. That said book did not sufficiently show the number and designation of the shares transferred.

9th. That said book did not sufficiently show the designation of the shares transferred.

10th. That said book did not sufficiently show the date of the transfer.

The Court refused to give any of the first six requested instructions.

As to the 7th, 8th, 9th, and 10th requested instructions, the Court instructed the jury that it was necessary for the book to show the number and designation of the shares transferred, and further, in order to give progress to the trial, that the book did show all that the law required.

That, if the jury found a verdict for the plaintiffs, they should find for twice the value of the bank stock, (the value of each share was admitted to be $100) *and interest on that sum from the date of the writ,* and to indicate in their verdict, if for the plaintiffs, the amount of interest.

As to the testimony of Mr. Coburn, the Judge instructed the jury that, if Lysander Cutler obtained the money for the discounted notes, and the money and notes through the messenger sent Dec. 7, by false pretences and statements, they would have no tendency to establish the claim of these plaintiffs, in that view of the case, and that his testimony should have no influence upon their minds, except so far as it might tend to satisfy them, in connection with the other evidence, that he transferred the bank stock to the defendant for the fraudulent purpose of concealing the same and prevent its being attached on writ, or seized on execution, by his creditors.

The jury returned a verdict for the plaintiffs "for $1200 damages and $451,60 interest thereon, from date of writ."

To all which rulings, instructions and refusals to instruct, the defendant excepted.

Upon the return of the jury into Court, the clerk inquired:—"Mr. Foreman, have you agreed upon a verdict?"

The foreman replied:—"We have;" and thereupon passed a paper to the clerk, who read it aloud in presence of the Court and jury, as follows:—

"Somerset, ss.—Sup. Jud. Court, March term, 1864.— The jury find that the said defendant 'did promise,' &c. and assess damages in the sum of twelve hundred dollars

debt, and four hundred and fifty-one dollars and sixty cents interest."

This paper was not signed by the foreman, neither did it have the word "foreman" on it.

The presiding Judge suggested that the verdict was not in proper form, and that the counsel for the plaintiffs should put it in form. Thereupon the counsel for the plaintiffs altered said paper, by striking out the words "*did promise,*" and inserting, instead thereof, the words "*is guilty;*" and also, by striking out the word "*debt,*" and inserting in its stead the word "*damage;*" and by adding at the right hand lower corner the word "*foreman.*"

Thereupon the clerk, by order of the presiding Judge, delivered said paper, so altered, to the foreman and requested him to read it, and, if he found it correct, to sign it.

The foreman read it, but not aloud, said it was correct, signed and redelivered it to the clerk.

Thereupon the clerk, addressing the jury, said, — " Gentlemen of the jury, hearken to your verdict as the Court have recorded it." He then read it aloud as signed, to the jury, and added; "so say you, Mr. Foreman, so say you all, gentlemen of the jury," to which the jury assented. All of this transpired in the presence of the defendant's counsel, who interposed no objection.

The defendant filed a motion to set aside the verdict for the reasons above stated.

*Josiah Crosby,* in support of the exceptions, submitted an elaborate written argument.

*J. S. Abbott,* for the plaintiffs.

The opinion of a majority of the Court was drawn by

DAVIS, J. — By the laws of this State, any one, who knowingly aids or assists a debtor in a fraudulent transfer or concealment of his property to secure it from creditors, is liable to any creditor in double the amount of the property transferred or concealed, not exceeding double the amount of such creditor's demand. R. S., c. 113, § 47.

In the case at bar, it is alleged in the writ that one Lysander Cutler, in 1856, was indebted to the Skowhegan Bank in the sum of five thousand dollars; that he was the owner of six shares of the capital stock in the People's Bank, of the value of six hundred dollars; that, in order to secure said stock from his creditors, he fraudulently transferred it to the defendant; and that the defendant knowingly aided and assisted him in so doing. Upon the trial of the case, certain questions of law were reserved, which are now presented for our determination.

In regard to the indebtment of Lysander Cutler, and the fact that he *owned* the bank stock, no question is raised. Did he *transfer* the stock to the defendant?

It is not denied that the defendant received the certificates, with indorsements purporting to be transfers to him, and that he has since that time transferred them to other parties. But he contends that the transfers to him were insufficient to give him the title, as against the *creditors* of Lysander Cutler, and that they were therefore not injured thereby.

Such a transfer may be made by an indorsement and delivery of the certificate of stock; but it is not valid, except between the parties thereto, " until it is entered on the books" of the bank.

The plaintiffs introduced the stock ledger of the People's Bank, as proved by the testimony of Percival. Whether it was the book of the bank, kept for that purpose, was a question of *fact*, properly proved in that way. No attestation by the cashier, or by any other officer, was necessary.

By that book, it appeared that Lysander Cutler purchased and paid for six shares of the original stock of the bank; and that he transferred them to the defendant, Dec. 1, 1856.

One of the shares was originally purchased by Lysander Cutler, a year after he purchased the others. He therefore held two certificates, — one for five shares, and the other for one share. In transferring them to the defendant, he indorsed upon the certificate of *five* shares a transfer of " the

within *share;*" and it is argued that the transfer was therefore invalid.

Although shares "*may* be transferred by the indorsement and delivery "of the certificates, it does not follow that they may not be transferred in other modes. Such indorsement and delivery is but the *evidence* of the transfer. The *fact* of the transfer appears, in this case, as well by other evidence, as by this. If there is any ambiguity in the indorsement arising from the use of the singular number instead of the plural, *as between the parties* it would be construed against the vendor. But when no question has been raised between the parties, and the vendee has taken and sold them all, without controversy, it would be absurd to allow him to deny his own title in any litigation with other persons.

It is said, however, that the stock ledger does not show "the number and *designation* of the shares" transferred to the defendant; and that the transfer was therefore invalid as to the creditors of Lysander Cutler.

It may be difficult to determine what meaning, if any, to give to the word "designation," in the statute of 1841. It was regarded as tautological, and omitted in the subsequent revision. A share in the capital stock of a corporation is merely some aliquot part of it, and not any particular part. Any designation, therefore, except by stating the owner or owners, would seem to be impossible. Even if the shares were consecutively numbered, of which there is no evidence, this would be the same. For, as a share is not any particular part, but merely an intangible, undivided *proportion* of the whole, the number would but designate the successive owners.

The stock ledger, in this case, shows that Lysander Cutler purchased six shares of the original stock, receiving his title, or evidence of it, directly from the corporation; and that he transferred *those six shares* to the defendant. If any designation of the particular shares was necessary, it appears, so far as was possible, upon the record.

The transfer being proved, it was for the plaintiff to show

that it was fraudulent on the part of Lysander Cutler; that *he* did it *with an intention thereby to secure it from his creditors.*

In order to prove this, certain conversations of Lysander Cutler with Coburn, Sept. 29, 1856, were proved, against the objection of the defendant. It may be doubted if the statements of Cutler had any tendency to prove fraud on his part. The counsel for the defendant claims that they were irrelevant to the question in issue. If they were so, and might have been excluded, we cannot perceive that the defendant could have been injured by their admission. It often happens that some facts not relevant are proved during a trial; and, though this should be carefully guarded against, lest the jury be confused by it, a new trial will not be granted on account of it, if the facts proved are such as could not have injured either party by misleading the jury.

In regard to the transaction of Dec. 7, 1856, the evidence was not admissible to prove "false pretences" on the part of Lysander Cutler, as stated by the Court. But, if it was admissible on any ground, it is immaterial what reason was given for it. This was but a few days after the transfer of the bank stock. And proof of other transfers made by the debtor, about the same time, has always been admitted in this class of cases. The exceptions do not show the contents of Cutler's letter; and there is nothing reported from which we can conclude that any evidence was admitted except of the *acts* of Cutler, and his written declarations accompanying his acts, in securing the transfer of the funds in the Skowhegan Bank to himself, and from him to the defendant. What other transfers of property from him to the defendant were proved at the trial, the case does not show. But that this kind of evidence is admissible on the question of the fraudulent intent of the *debtor*, there can be no doubt. *Warren* v. *Williams, ante,* p. 343.

When the verdict was returned into Court by the jury, it was not signed by the foreman. Whether it is really necessary, in any case, when the verdict is returned, an-

nounced, affirmed, and recorded, that it should be thus signed, we need not determine. In criminal cases no written verdict is returned. The foreman announces it verbally, and it is entered upon the record. But if a written verdict is necessary, signed by the foreman, the fact that the signature was written in open Court, instead of the jury room, is no objection to it.

The plaintiff was not entitled to interest. This was given by the jury, under the instructions of the Court. But it was stated in a distinct and separate sum in the verdict. If the plaintiffs will remit the amount of interest, the verdict will be allowed to stand, and judgment will be rendered upon it. If the amount of interest shall not be remitted, the verdict will be set aside, and a new trial will be granted.

APPLETON, C. J., WALTON, DICKERSON and DANFORTH, JJ., concurred.

KENT, J., dissenting. — I am not satisfied as to one point. I think I should concur on all the other points decided, except as to interest, which is not fully considered in the opinion. The point I allude to as unsatisfactory, is the admission of the testimony of Coburn, as to the declarations of Lysander Cutler on Sept. 29, 1856. They were clearly inadmissible, even to prove an intentional fraud on the part of the *father* in reference to the case on trial. They were made long before, — were in relation to a matter *entirely* distinct from the one in question, — were not connected with any act, or, if by a great stretch they may be so connected, that act was obtaining and receiving money on other notes, by means of these statements. The *defendant* had no connection with this money or these notes. As well might you introduce evidence, in case Lysander Cutler was on trial on an indictment for fraudulently obtaining this money from the bank on the 29th of September, that about the same time he stole money from another, or committed an assault and battery, or forged a note passed to another bank. To make evidence of other transactions at and about same time ad-

missible, they must in some way be connected with the fraud in question, or as a part of its history, or showing a connection between the parties in reference to that outside matter, and a like fraud between same parties in such other transaction, or they must be similar frauds of same nature and kind. The evidence in relation to the transactions of the 7th of Dec., may be admissible on one or more of these grounds. It may be correct to allow such evidence, to show the history of a *like* transaction *between the parties*, near the time of this one; and to fix fraud on Lysander, the fact that he made fraudulent and false pretences to get negotiable notes into his possession, and that he immediately indorsed them to his son, the defendant, may be pertinent. The false pretences and earnestness to get notes, instead of accounts, are facts in the history, tending to show a fraudulent purpose on his part.

The testimony as to the declarations on 29th of Sept., it is admitted in the opinion are clearly inadmissible, but it is determined that they are *immaterial*, and do not in themselves show any fraudulent intent. I am not satisfied with this view. I think that the Court should be slow to consider statements as immaterial, or as of no force, in favor of a party who insists upon putting them in, after objection, and after, as we know, the same question as to their admissibility had been before the Court, and their admissibility strongly and earnestly urged and objected to by the parties. It is easy now to say that they were immaterial strictly to the issue. But one can hardly "wink hard enough" not to see that they were deemed important by the plaintiffs' counsel, and that they might be, and no doubt were pressed upon the attention of the jury, to fix on Lysander Cutler, if not on the defendant, a gigantic scheme of fraud. If of no use, why pressed in? I am for holding counsel responsible when they foist in, against right and law, and well settled principles, proof of facts which they have no legal right to put in; and this, after full warning and abundant caution. There may be cases, I admit,

Skowhegan Bank *v.* Cutler.

where it is so clear and palpable that no possible use could be made of the facts, either legitimately or illegitimately, and that, in no way could they possibly prejudice or mislead or confuse a jury, they may be deemed immaterial. But I think it should be so clear "that he may run that readeth it." There should be no question in any mind.

The ground of the opinion is, that these declarations of Lysander Cutler were explicit assertions of honest intentions, and that no fraud could be extracted from them. It is true, that there is no direct evidence reported, as introduced by plaintiff, to show the falsity of these declarations. But there was evidence that *these notes* of the 29th of September were not paid at maturity; that the plaintiffs sued the signers, Farrar & Cutler, and obtained judgment, and that no part of the judgment had been satisfied. Even if we lay out of the case the fact, notorious through all the State, that Farrar & Cutler failed for a large amount, we have enough in the case to show that there can be no reasonable doubt that the fact of such failure was before the jury. If so, there can be no doubt that this illegal testimony, so pertinaciously insisted upon, was used to satisfy the jury that all these statements were false, and that Lysander Cutler, then in failing circumstances, used them for the fraudulent purpose of getting the money, and that this was evidence of a general fraudulent scheme, on *his* part at least, to cheat the public generally and this corporation in particular. I do not think that we have a right to assume that this testimony was put into the case, by the able counsel for the *plaintiffs*, merely to satisfy the jury that Lysander Cutler was an honest man, and told the honest truth in every case but the one on trial.

Nor can we assume that the jury could not possibly have been misled or prejudiced, or confused by its introduction. If in,—then it could be used and commented on, in connection with all the facts proved, and we must all have forgotten the lessons of our professional experience, if we cannot see how these facts and declarations could be used to satisfy

a jury of the bad character, falsehood and fraud of the party implicated. In short, I say, that when a party will put in clearly illegal testimony, after being fairly cautioned, he must show clearly, and beyond all possible question, that it could not in anyway prejudice the case of his opponent.

It does not appear that the presiding Judge made any allusion to this testimony in relation to the declarations on the 29th of Sept., as *irrelevant* or *immaterial*, but spoke of it as tending to prove that Lysander Cutler " obtained the money *for the discounted notes* by false pretences and statements." This clearly shows that the whole matter had been argued before the jury, on the ground that these statements, on the 29th, were *false* and fraudulent, and not explicit assertions of honesty. No one, it seems to me, can doubt this, or that they were attacked and denounced as false and fraudulent. All this was wrong. The Judge allowed the jury to consider them, so far as they did influence their minds, in connection with other testimony, to show fraud as to the bank shares. The case of *Lincoln* v. *Fitch*, 42 Maine, 468, is in point. The Court states " that the evidence introduced for one purpose, was suited to mislead the jury in the consideration of other matters before them, wherein, it was stated by the Judge, to be inadmissible." I am therefore in favor of sustaining the exceptions, on the ground of the admission of improper testimony.