37 · 361
107   415

37    361
111   198

37    361
114   602

37    361
116   168

37    361
135   289

## POLK COUNTY v. HIERB.

1. **Demurrer:** GROUNDS OF.  A demurrer can be interposed only in respect to matters appearing on the face of the pleadings.

2. **Jurisdiction:** HOW CONFERRED : WAIVER.  When the venue in an action at law commenced in the district court was upon motion of defendant, grounded on the prejudice of the judge, ordered to be changed to the circuit court before the legislation conferring on said court chancery jurisdiction, and the defendant, after such jurisdiction had been conferred, appeared therein and filed a general demurrer to the petition, and also to the jurisdiction of the court, on the ground that the relief prayed for could only be granted by a court of equity, and that the circuit court had no equity powers when the order for the change of venue was made, it was *held*, that the general appearance of the defendant waived any objection as to the jurisdiction, and that the demurrer thereto was properly overruled.

3. **Constitutional law:** PROHIBITORY LIQUOR LAW.  Section 3, chapter 47, Laws of 1862, providing that a judgment rendered against any one for the violation of the act for the suppression of intemperance, shall be a lien upon the property of a third person, occupied and used with his knowledge and consent, for the unlawful sale or manufacture of intoxicating liquor, is not unconstitutional.

*Appeal from Polk Circuit Court.*

WEDNESDAY, OCTOBER 22.

On the 27th day of May, 1872, plaintiff filed in the Polk district court a petition at law, stating substantially that in March, 1872, one, James Peck, had been convicted of nuisance committed in violation of the act for the suppression of intemperance, and fined $500 and costs ; and that the crime was committed in a building and on a lot duly described, belonging to the defendant J. Hierb, and used for such unlawful purpose, with the knowledge and consent of defendant.  The petition alleges that no part of the fine has been paid, and prays that the judgment be declared a lien on said property of the defendant.  On the 20th of October, 1872, the defendant filed a motion based upon the prejudice of the judge, for a

VOL. XXXVII. — 46

change of venue to some other court having jurisdiction of the cause, and on the 1st of November, 1872, the court changed the venue to the circuit court of Polk county.

On the 21st day of January, 1873, defendant filed a demurrer, insisting upon the following defects :

1. Failure to describe the portion of the building occupied.

2. Defect of parties plaintiff.

3 and 4. Want of jurisdiction in a court of law to enforce the judgment, otherwise than by issuing execution.

5 and 6. Want of jurisdiction of the circuit court.

7. Unconstitutionality of the law upon which the proceeding is based.

The court sustained the demurrer as to the first four grounds thereof, overruled it as to the fifth and sixth, so far as to hold that the defendant, having appeared generally on the 21st day of January, 1873, thereby waived any question of jurisdiction at the time of appearance, and also overruled the demurrer as to the seventh ground thereof, and transferred the cause to the equity side of the court, and gave plaintiff leave to amend.

The defendant excepted to the ruling upon the fifth, sixth and seventh grounds of demurrer, and to the order transferring the cause to the equity docket, and assigned the same as error.

*L. Rutkay*, with *Phillips & Phillips* for the appellant.

*Bissell & Crane* for the appellee.

DAY, J.— I. The order changing the venue was made on the 1st day of November, 1872.

The circuit court did not acquire general equity jurisdiction until the first Monday of January, 1873. On the 21st day of January, 1873, the defendant appeared and filed a demurrer, calling upon the court to determine that the petition did not sufficiently describe the building ; that the proper party was not made plaintiff; that the relief asked can be granted only by a court of equity ; that because the relief asked is matter of equitable cognizance, the circuit court has no jurisdiction ;

Polk County v. Hierb.

and that the law under which the proceeding is instituted is unconstitutional. The court rightly overruled the demurrer upon the ground of want of jurisdiction, for several reasons:

1. A demurrer can be interposed only for matters appearing upon the face of the petition. At the time this demurrer was filed the circuit court had jurisdiction of the subject-matter of the action. Whether the order for change of venue was made before or after equitable jurisdiction was conferred upon this court, the face of the petition would not show. This objection, therefore, could not be raised by demurrer. Rev., §§ 2876, 2878.

1. DEMURRER.

2. At the time the application for change of venue was made, the cause was properly pending in the district court as a law action. Without making any motion to transfer to the equity side of the court, defendant moved for a change of venue. The court properly therefore, changed the venue to the circuit court. Laws 13th Gen. Ass., ch. 167, § 14.

2. JURISDICTION.

When the case came into the circuit court it was determined that the cause was one of equitable cognizance. The case is not like one where a plaintiff voluntarily presents his case to a court which has no jurisdiction. He applied to a court of competent jurisdiction. He is in the circuit court, not from his own volition, but because of the action of the district court and of the defendant.

It would be unjust to allow the defendant to procure this change to the circuit court, and then to procure a dismissal of the cause, because of that court's want of jurisdiction. If in fact the circuit court had no jurisdiction, the proper course, it seems to us, would be to remand the cause to the court from which it emanated, in order that the venue might be changed to the proper court. Great hardship might result from the sustaining of a demurrer, working, in effect, a dismissal of the cause.

3. If this cause had been sent back to the district court, that court could have done nothing other than to change the venue to this circuit court, for at the time defendant appeared the circuit court had jurisdiction over equitable cause.

4. If this petition had been filed in the circuit court before the first Monday in January, 1873, and afterward defendant had appeared generally to the action, he clearly would have conferred jurisdiction: See *Iowa Northern Central Railway Co.* v. *Ritter*, June term, 1873. We can not see but that by his appearance, and filing a general demurrer, he is in the same attitude now.

5. It never was judicially determined that the relief asked by plaintiff could be properly granted only by a court of equity, until defendant's demurrer presenting that point was sustained. Up to this time the cause was pending as a law action.

When the demurrer was sustained, the court had complete equity jurisdiction.

The court, therefore, properly sustained the cause for trial.

II. It is claimed that section 3, chapter 47, Laws 1862, in so far as it declares that a judgment rendered against any one for

3. CONSTITU-TIONAL LAW. a violation of the acts for the suppression of intemperance, shall be a lien upon the property of a third person occupied and used with his knowledge or consent for the unlawful traffic in liquors, is unconstitutional and void.

Much of the argument of appellant goes to the extent of denying to the legislature the constitutional right to prohibit the manufacture and traffic in intoxicating liquors, or to confiscate or destroy those manufactured or sold in violation of the provisions of law. This question was fully and ably discussed in *Santo et al.* v. *The State of Iowa*, 2 Iowa, 165, in which some of the authorities cited by appellant are reviewed. Prohibition is now the settled policy of this State, and the right of the legislature to regulate or prohibit the sale of intoxicating drinks, and to enforce obedience to the law by the confiscation or destruction of the liquors and the vessels containing them, cannot now be regarded as an open question. The precise question here involved, however, pertains to the right of the legislature to declare a judgment against a defendant a lien upon the property of another used for the unlawful purpose of manufacture or sale, with the owner's consent or

knowledge, and it has never hitherto been determined in this State.

We cannot, probably, better consider the question than to notice, *seriatim*, the objections made by appellant to the constitutionality of the statute in question.

1. It is claimed that the statute seeks to take private property for a public use without making compensation therefor, in violation of article 1, section 18, of the constitution.

This objection needs but brief consideration. The article of the constitution in question is a limitation of the right of eminent domain. It has always been conceded that the right to adopt legislation such as that under consideration rests upon the police power — the power vested in the legislature by the constitution to make, ordain and establish all manner of wholesome and reasonable laws, statutes and ordinances, either with penalties or without, not repugnant to the constitution, as they shall judge to be for the good and welfare of the commonwealth, and of the subjects of the same. Cooley's Const. Lim. (2d ed.), 572 and 583, and cases cited; *Santo et al.* v. *The State of Iowa*, 2 Iowa, 165. The many cases cited by appellant under this branch of the argument have but little direct application to the case.

2. It is next urged that the act authorizes the taking of private property without trial, and hence is in conflict with section 9 of the bill of rights, requiring that no person shall be deprived of life, liberty or property without due process of law.

This objection is based upon a misapprehension of the effect of the statute. The section under consideration is as follows: " That for all fines and costs assessed, or judgments rendered of any kind against any person or persons for any violation of the provisions of this act or the acts to which this act is supplementary, the personal and real property of such person or persons as well as the premises and property, personal or real, occupied and used for that purpose with the consent or knowledge of the owner thereof or his agent, by the person or persons manufacturing or selling intoxicating liquors con-

trary to the provisions of this act, or the acts to which this act is supplemental, shall be liable for the payment thereof, and all such fines, costs or judgments shall be a lien on such real estate until paid."

The statute simply provides that fines assessed and judgments imposed for violations of the law, shall be a lien upon property used with the consent or knowledge of the owner, by the manufacturer or seller, for the purpose of the manufacture or sale. The statute does not provide that this property shall be taken without trial, nor can it be inferred from it that it authorizes such a precedure. Upon the contrary the opposite inference is the only one that can logically be drawn therefrom. Not all property used for the unlawful sale or manufacture is liable for fines or judgments against the manufacturer or seller, but such only as is so used *with the consent or knowledge of the owner*.

Before the property can be made so liable it must be established, as a fact, that the property was so used with the owner's knowledge or consent.

True the statute does not provide the manner in which this fact is to be made to appear. And it is not necessary that it should do so. It is sufficient that the existence of this fact is made a condition precedent to the liability of the property, and that the statute does not provide that the property shall become liable without a judicial determination that the fact exists. In this respect this statute differs from the one construed in *Fisher* v. *McGrier*, 1 Gray 26, which authorized the condemnation of the property after being advertised for two weeks by written notice. The court in that case say : " The manifest objection to this notice is, that it fixes no time or place at which defendant may appear with his evidence, and have a trial, and meet the witnesses' face."

But our statute does not provide for such condemnation. It declares that the property shall be liable when certain facts exist. It does not intimate that these facts are to be determined in any other than the usual way. The *general* statutes provide for the determination of all questions of fact, and no

other mode being provided for the ascertainment of the existence of this fact, it must be determined in the usual way, that is, in a competent court, by a legal jury, after due notice to the owner of the time and place of hearing. It follows that the statute does not authorize the taking of property without trial, and that it is not vulnerable to this objection urged by appellant.

The third and fourth objections may be considered together. They are as follows:

3. " The statute charges the defendant with a crime, and seeks to punish him therefor summarily, without a trial by an impartial jury; without informing him of the accusation against him, and practically bars his right to be confronted with the witnesses against him. All this in violation of section 10 of the bill of rights."

4. " The act charges an offense, without requiring the filing of an information under oath, or an indictment, as preliminary to trial thereon, which is a violation of section 11 of the bill of rights."

There are no crimes in this State but those expressly declared by statute. Section 4427 of the Revision, is as follows: " A crime or public offense in the meaning of this Code, is any act or omission forbidden by law, and to which is annexed, upon conviction thereof, a punishment." Crimes or public offenses, are divided into felonies and misdemeanors. Rev., § 4428. That an act or omission renders a party liable to a pecuniary forfeiture, which, when collected, goes into the public treasury, does not constitute the act or omission a crime. Section 447 of the Revision, provides that any person elected to a township office, and refusing to qualify and serve, shall forfeit the sum of $5, which may be recovered by action in the name of the county, to the use of the school fund in the county.

Section 883 of the Revision renders one elected to the office of road supervisor, who shall fail to qualify, liable to a like forfeiture, to be collected by suit by his successor, and applied to the repairing of roads in his district. And section 887 of the Revision provides that any person liable to work on the

roads, who shall fail to do so, being duly notified, or who shall spend the day in idleness, shall forfeit for each day's delinquency, $1.25, to be recovered by action of debt in the name of the supervisor. Many similar illustrations might be given. No one claims that these delinquencies are crimes, although the legislature might have made them such, and punished them by information.

The power to adopt these, and similar provisions, must be referred to the police power, which "pervades every department of business, and reaches to every interest and every subject of profit or enjoyment."

From the same power, we have already seen, is derived the right to regulate or prohibit the sale or manufacture of intoxicating liquors. Now, the act of the owner of property, who permits another to use it for the sale or manufacture of intoxicating liquor, in violation of law, is not a crime. It is not a crime, simply because the legislature has not made it such. That it would have been competent for the legislature to declare it a crime, just as much as the unlawful selling or manufacturing, there can be no doubt. But that it has not done so, is apparent from the whole structure of the statute.

It only provides that property, used with the consent or knowledge of the owner for an unlawful purpose, shall be liable to a charge, which shall be a lien thereon. And this is upon the same principle that his unsound meat or other provisions would be liable to immediate seizure and destruction, if he should offer them for sale in market. See Rev., § 1096.

5. It is next objected that this statute is an *ex post facto* law, and, as such, conflicts with section 10, article 1 of the constitution of the United States.

An *ex post facto* law is a retroactive criminal law, which makes an act punishable in a mode or measure in which it was not punishable when the act was committed, unless it be to diminish the punishment.

As this statute does not make the act in question a crime, it follows that it cannot be *ex post facto*. See *State ex rel.* v. *Squires*, 26 Iowa, 340 ; *Bennett et al.* v. *Fisher et al.*, id. 497.

6. It is further objected that the statute is retrospective, and impairs vested rights.

It is a rule of construction, that unless the retrospective intention of the legislature is clearly expressed on the face of the enactment, it shall be deemed to commence in *futuro*. *Bartruff* v. *Remy*, 15 Iowa, 257. There is nothing in this statute to render this intention apparent. It is true the language employed is that for all *fines assessed* or *judgments rendered*. The perfect participles are employed. Participles have no reference to time. They simply show the action, being or state of the verbs from which they are derived, as finished or unfinished.

The language, fines assessed or judgments rendered, refers to the condition of the fine or judgment as assessed or rendered, instead of undergoing the process of assessment or of rendition at the time the liability attaches to the property unlawfully employed. It has no reference to the time when this condition attached to the fine or judgment; and it refers just as much to a fine assessed or a judgment rendered after the enactment of the statute as before. This language is not, then, as is argued, necessarily *retroactive*.

Section 1 of the act provides an additional remedy against any person who shall, *by the manufacture and sale of intoxicating liquors, cause the intoxication of any person*. And section 2 gives a remedy to the wife, child, parent, etc., who *shall be injured in person or property*, or means of support, by *any intoxicated person*. And section 3, the one now under consideration, provides, " that for all fines and costs assessed, or judgments rendered of any kind against any person or persons for any violation of the provisions of this act, or the acts to which this is supplementary," etc. Now, it is apparent that there could be no violation of *this act* until it took effect, and that the words assessed and rendered, at least so far as some of the offenses provided for are concerned, refer to future and not to past time.

Inasmuch, therefore, as the language applied to a part of the statute cannot have a retroactive operation, and when ap-

plied to the other subjects, does not clearly show an intention to make it retroactive, and as it does no violence to any provision of the statute to declare it merely prospective, we have no hesitation in so limiting its operation.

7. Lastly, it is claimed that the act inflicts punishment upon one man for a crime committed by another. It is clear to us that it does not do so. It subjects his property to forfeiture for his own act and not for that of another. Intoxicating liquor cannot be manufactured or sold without vessels to contain it, or a place in which the manufacture or the sale is conducted. The party who knowingly furnishes these vessels and this *locus* assists another to perpetrate a crime. It is for this act and not for the other's crime that his property is liable to a charge, if judgment shall be rendered against the other. We have before stated that this act of itself might have been declared criminal, and as such punished. See Cooley on Const. Lim. 596.

We have thus reviewed all the objections urged to this statute, and have found none of them tenable. Of the right of the legislature to pass this statute we entertain no doubt. It follows almost as a corollary from the prior decisions upholding the constitutionality of the act of 1855. We are equally well satisfied with the policy of this law.

So many are the tricks and the subterfuges resorted to by those engaged in the nefarious business of vending ardent spirits that the wisest provisions are often evaded, and the best laws set at defiance. The only way in which most liquor dealers can be reached is by making the fines imposed a lien upon the premises used for the purposes of sale. The striking out of this provision would emasculate the law and render it totally ineffectual.

We are clearly of opinion that the judgment of the circuit court should be

Affirmed.