O. H. PERKINS, Appellant, v. D. B. LYONS, W. F. STOTTS, NEW ENGLAND SYNDICATE and the VERMONT SYNDICATE, Defendants, and THE BRATTLEBORO SAVINGS BANK, Intervener and Appellee.

**Attachment of Corporate Stock:** TRANSFER: *Record.* Under Code 1873, section 1078, providing that transfers of corporate stock shall not be valid until entered on the books of the corporation, a transfer of stock is not valid, as against creditors having actual notice thereof, even in a case where the assignee re-

quested the proper corporate officer to record the transfer, but he failed so to do.

*Reasonable effort to obtain.* An assignee of corporate stock cannot, because he insisted that the transfer be made, insist that he exhausted all reasonable means to have the stock transferred on the books of the corporation, as required, by Code 1873, when he was in the corporation's office, where the books were kept, and he could have seen the transfer made, the secretary of the corporation being willing to make it.

BOOKS KEPT OUT OF STATE. Under Code 1873, section 1078, requiring the books of a corporation to show all transfers of stock, and be kept subject to inspection, the transfer of stock in an Iowa corporation is not valid, as against creditors, when made on the books of the corporation, kept in Boston, Mass., as the books are to be kept for inspection in the state.

STATUTES: *Retraoctiveness.* Code 1873, section 1078, providing that a valid transfer of corporate stock must be made on the corporation's books, as amended by Acts Twenty-sixth General Assembly, chapter 81, providing that such a transfer as collateral security is valid after notice to the secretary of the corportion, did not give any validity, as against creditors, to an unrecorded transfer of stock, as collateral security, made before the latter act was passed, as the act is not retroactive.

RECORD OF TRANSFER: *Sufficiency.* Under Code 1873, section 1078, requiring transfers of corporate stock to be made on the books of the corporation, a memorandum, made with a pencil on the stub of the stock book, showing the parties, the stock transferred, and the nature of the transfer, is a sufficient record thereof.

**Fraudulent Attachment:** EVIDENCE HELD INSUFFICIENT. That an attachment was levied in fraud of creditors of the debtor cannot be established by evidence of a general nature, and founded largely upon supposition.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

SATURDAY, APRIL 14, 1900.

ON the fourteenth day of September, 1896, this action was brought by the plaintiff against the defendants D. B. Lyons and W. F. Stotts upon certain notes. It was aided by attachment, and a levy was made upon stock issued to

D. B. Lyons by the New England Syndicate and the Vermont Syndicate; both corporations organized under the laws of this state, with their principal place of business in Des Moines. The defendants Lyons and Stotts are in default.. The Brattleboro Savings Bank intervened. setting up the facts: That in August, 1895, it loaned to D. B. Lyons a large sum of money, and that to secure the payment of said loan he assigned and transferred to it fifty shares of stock of the New England Syndicate, which shares were evidenced by stock certificate No. 88 of said corporation. That this certificate was delivered to intervener about August 15, 1895, with the following indorsement thereon. and has since remained in its possession: "For value received, I hereby transfer and assign to the Brattleboro SavBank, as collateral security, the shares of stock within mentioned, and authorize the secretary of said syndicate to make the necessary entrance on the books of the company. Witness my hand this sixteenth day of August, 1895. D. B. Lyons. Witnessed by R. R. McCutcheon." That on June 23, 1896, intervener notified the New England Syndicate of the transfer to it of this stock, and demanded that the same be properly transferred on the books of said syndicate. That the following memorandum in writing was then attached to the stub of said certificate, where it has since remained: "June 23, 1896. Notice is hereby taken by the New England Syndicate that certificate No. 88, for 50 shares of its capital stock, has been assigned and transferred to the Brattleboro Savings Bank of Brattleboro, Vt., as collateral security for indebtedness of D. B. Lyons to said bank. Henry O. Cushman, Sec'y of N. E. Syndicate." The intervener further alleged that about November 24, 1892, it made a loan to D. B. Lyons, and took, as partial payment, security therefor, fifty-six shares of the capital stock of the Vermont Syndicate, evidenced by five certificates, which were at the time indorsed in blank by Mr. Lyons and delivered to intervener, and which have ever since been held by it; that about

the time of the delivery of the stock to the intervener,—before September 14, 1896,—the Vermont Syndicate was verbally notified of such delivery, and of the terms thereof; and that on the fifth day of May, 1896, its secretary was again notified of such transfer and delivery, and demand made that said transfer be noted upon the stock book of the syndicate. The stock described in the intervener's petition is the same stock that was levied upon under the plaintiff's writ of attachment, and upon motion of the intervener, the New England Syndicate and the Vermont Syndicate were made parties defendant, and the cause transferred to the equity side of the court for trial. A trial was had upon the merits, which resulted in a judgment awarding the fifty shares of stock in the New England Syndicate to the intervener, and the fifty-six shares in the Vermont Syndicate to the plaintiff. The plaintiff and the intervener both appeal. The plaintiff will be designated as the appellant and the intervener as the appellee.—*Affirmed.*

*Guernsey & Granger* for appellant.

*Kinne, Hume & Bradshaw* for appellee.

SHERWIN, J.—In addition to the issues set forth in the foregoing statement of the case, the intervener charged the plaintiff with actual knowledge of the transfer of the stock to it long before the commencement of this action, and charged that the attachment was issued and levied by agreement, collusion, and conspiracy entered into between the plaintiff and Mr. Lyons with the intent to steal away the intervener's stock.

I. The appellee's first contention is that the suit and writ of attachment were "devised" and "contrived" by the plaintiff and D. B. Lyons with the fraudulent intent and purpose to hinder, delay, and defraud the intervener in the collection of its debt. It is conceded by the appellant that an attachment issued for a fraudulent purpose may be void,

as well as a conveyance made for the same purpose. It clearly appears that immediately after the notice of attachment was served upon D. B. Lyons, he handed to Mr. Bradshaw, who was in waiting at his request, a deed of general assignment, which was at once recorded. It may be inferred from the evidence that Mr. Lyons, through his agent, Mr. Thompson, sought to give the plaintiff a preference over his general creditors, but the validity of the assignment is not in issue in this case. The evidence relied upon by the appellee to sustain its contention that the attachment was fraudulent is of a general nature, and founded largely upon supposition, and does not furnish the satisfactory proof of fraud required by the law.

II. It is very strenuously urged by the intervener that the plaintiff had actual notice of the pledge of the stock in question to it prior to his levy thereon, and that the case of *Screen Co. v. Stodghill,* 103 Iowa, 437, should be overruled, and such notice be now held sufficient to defeat the lien of plaintiff's attachment. It may well be questioned whether the evidence is sufficient to sustain this claim of actual notice. If actual notice were clearly proven, we are not convinced that we ought to overrule *Screen Co. v. Stodghill, supra.* Many things may be said in support of Mr. Justice Kinne's opinion in that case.

III. No entry or memorandum of the transfer of the Vermont Syndicate stock was ever made on its books, as required by section 1078, Code 1873, which is as follows: "The transfer of shares is not valid, except as between the parties thereto, until it is regularly entered on the books of the company, so as to show the name of the person by, and to whom transferred, the numbers, or other designation of the shares and the date of the transfer." At the annual meeting of the stockholders of the Vermont Syndicate which was held in Des Moines in May, 1896, Mr. Harris, the then cashier of the intervener, was present; and he at that time notified the secretary of the Ver-

mont Syndicate that the Brattleboro Bank held certain of its certificates, issued to Mr. Lyons, as collateral security, and requested Mr. McCutcheon, the secretary, to make proper entry of such assignment on the syndicate's books, which Mr. McCutcheon agreed to do, but, as we have seen, did not. This is the substance of the conversation between Mr. Harris and Mr. McCutcheon on this question. The appellee contends that it exhausted all reasonable means to secure the proper transfer of this stock on the books of the Vermont Syndicate, and is consequently protected against the levy of plaintiff's attachment, notwithstanding the transfer had not been entered upon the corporate books. This contention we cannot sustain. The books of the corporation were in the secretary's office in Des Moines at the time of the conversation above given. They were within easy reach of the secretary and Mr. Harris. It would have taken but a moment to have secured them, and had the proper entry made under the eye of Mr. Harris himself. This the secretary was willing to do, and no question was made as to the right to have the transfer so entered; but Mr. Harris did nothing further in the matter, and Mr. McCutcheon, the secretary, testifies that he forgot it,—"just simply neglected it." Mr. Harris was surely as much at fault for this failure on the part of Mr. McCutcheon as was Mr. McCutcheon. Mr. Harris did not then exhaust all reasonable means to have the transfer recorded, and his effort in this direction does not bring the appellee within the rule invoked in its aid. *Sargent v. Insurance Co.,* 8 Pick. 90; *Plymouth Bank v. Bank of Norfolk,* 10 Pick. 454; *Colt v. Ives,* 31 Conn. 25; *Weber v. Bullock,* 19 Colo. Sup. 214 (35 Pac. Rep. 183). Chapter 81 of the Acts of the Twenty-sixth General Assembly amended section 1078 of the Code by adding thereto the following: "And provided further that when any shares of stock shall be transferred to any corporation as collateral security, such corporation may notify the secretary of the corporation whose stock is transferred as afore-

said, and from the time of such notice, and until notice that said stock shall have ceased to be held as collateral security, said stock so transferred and noticed as aforesaid shall be considered in law as transferred on the books of the corporation which issued said stock, without any actual transfer on the books of such corporation of such stock." This amendment became law on the fourth day of July, 1896. Appellee insists that the notice to the syndicate in May of the same year was sufficient to bring this case within the terms of the statute after this enactment became a part thereof. To so hold would be to give the statute a retroactive effect. The act itself does not indicate such an intent on the part of the legislature, and no reason appears to us why we should so construe it. *Bartruff v. Remey,* 15 Iowa, 257; *Polk County v. Hierb,* 37 Iowa, 369; *McIntosh v. Kilbourne,* 37 Iowa, 420.

IV. The uncontradicted evidence shows that from some time prior to May, 1896, up to the time of the plaintiff's levy upon the New England certificate of stock No. 88, the stub of that certificate bore the following pencil notation: "With Brattleboro S. B., as collateral." At the time of the levy there was attached to said stub the memorandum in writing dated June 23, 1896, which is set out fully in the statement preceding this opinion. This was attached to the stub on the twenty-third day of June, 1896, in Boston, Mass., at the request of Mr. Harris. Prior to the stockholders' meeting of this syndicate in May, 1896, Mr. Treat was its secretary. His residence was in Des Moines, where he kept the stock book containing the stub in question. At the May meeting, 1896, Mr. Cushman was elected secretary. His home was in Boston, Mass. He returned to Boston soon after his election as secretary, and took the stock book with him, where it remained until after plaintiff's levy. This stock book was marked upon the inside of the cover, "Stock Certificate Book and Register of the New England Syndicate." The stub in question reads as

follows: "No. 88, for 50 shares. Issued to D. B. Lyons. Dated Aug. 16th, A. D. 1895." There also appeared on it the pencil notation which we have heretofore noticed. It is conceded by counsel for appellant that the memorandum of June 23, 1896, would have been a good transfer, under the rule announced in *Moore v. Opera-House Co.*, 81 Iowa, 45, if the stock book had been kept in the syndicate's office in Des Moines, but he contends that the memorandum placed upon a book kept in the state of Massachusetts did not operate as a transfer on the books, as against the plaintiff. There is great force in this position. One of the provisions of section 1078 of the Code reads as follows: "The books of the company must be so kept as to show intelligibly the original stockholders, their respective interests, the amount paid on their shares; and all transfers thereof; and such books, or a correct copy thereof, so far as the items mentioned in this section are concerned, shall be subject to the inspection of any person desiring the same." This statute relates to corporations organized under the laws of this state, and doing business herein. It must have been the intention of the legislature to require the books of the corporation to be, also, kept where they could be inspected. It would be idle to require books to be kept as above provided, and then permit them to be kept in a distant state, one thousand five hundred miles from its principal place of business. In *Ft. Madison Lumber Co. v. Batavian Bank*, 71 Iowa, 270, the court, in construing this same statute, said: "It is contended by the appellee that the provision for a record, designed to show who the stockholders are at any given time, is for the sole benefit of the corporation itself. But there is nothing in the provision that calls for such construction. Besides, nothing can be clearer than that the record is for the benefit of any one who may desire to inspect it, because it is expressly provided for such." We conclude, then, that this statute, by necessary implication, required the books of the corporation to be kept at its principal place of business in this state

(*State v. Milwaukee, L. S. & W. Ry Co.,* 45 Wis. 579), and that the memorandum attached thereto in Boston, Mass., did not, for this reason, furnish the record of the transfer required by the statute. We next come to the question of whether the pencil memorandum on the stub of the stock book was a sufficient transfer, under the statute. The stub itself showed to whom the stock had been originally issued, and the fact that it bore no other indorsement than the pencil one mentioned would indicate that it had been transferred by Mr. Lyons, the person to whom issued. The stub itself also gave the number of the shares. It appears from the record that the plaintiff knew Mr. Harris, and knew that he was the treasurer of the Brattleboro Savings Bank, and it is to be presumed that he knew where the bank was located. This being true, would not the pencil notation on the stub of the New England Syndicate stock book, "With Brattleboro S. B., as collateral," convey all the additional information required by the statute? Every requirement was present, except the date; and we do not think that was of great importance in this case, because the indorsement had been of long standing when the levy was made. We think the pencil notation a sufficient transfer, under the statute. *Moore v. Opera-House Co.,* 81 Iowa, 45. See, also, *American Nat. Bank v. Oriental Mills,* 17 R. I. 551 (23 Atl. Rep. 795), *Fisher v. Jones,* 82 Ala. 117 (3 South. Rep. 13); *Bank v. Cutler,* 52 Me. 509.

There was no error in trying the case in equity. The judgment of the district court is affirmed on both appeals.— AFFIRMED.